UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

ROBERT L. SWINTON, JR.,

                              Plaintiff,

            v.

LIVINGSTON COUNTY,
LIVINGSTON COUNTY JAIL,
MONROE COUNTY,
MONROE COUNTY JAIL,
NURSE SCHINSKI,
NURSE YUNKER,
CHIEF DEPUTY YASSO,
CORPORAL SLOCUM,
DEPUTY FORRESTER,
CORRECT CARE SOLUTION, INC.,
CORRECTIONAL MEDICAL CARE, INC.,
DR. MAXIMILLIAN CHUNG, and
DR. CHARLES THOMAS,

                              Defendants.
_____

REPORT
and
RECOMMENDATION
-----------------------------
DECISION
and
ORDER

15-CV-00053A(F)

APPEARANCES:        ROBERT L. SWINTON, JR., *Pro Se*
                    22008-055
                    Loretto Federal Correctional Institution
                    Inmate Mail/Parcels
                    P.O. Box 1000
                    Loretto, Pennsylvania  15940

                    WEBSTER SZANYI, LLP
                    Attorneys for Defendants
                    MICHAEL P. McCLAREN,
                    FLORINA ALTSHILER, and
                    RYAN G. SMITH, of Counsel
                    1400 Liberty Building
                    Buffalo, New York  14202

## JURISDICTION

This case was referred to the undersigned on April 15, 2015, by Honorable

Richard J. Arcara for all pretrial matters.  The matter is presently before the court on a

motion to dismiss or for summary judgment filed by Defendants Nurse Schinski, Nurse

Yunker, Chief Deputy Yasso, Corporal Slocum, and Deputy Forrester on December 20,

2017 (Dkt. 188), and on Plaintiff's motion for sanctions filed January 4, 2018 (Dkt. 198).[1]

## **BACKGROUND**

Plaintiff Robert L. Swinton, Jr. ("Plaintiff"), proceeding *pro se*, commenced this

civil rights action pursuant to 42 U.S.C. § 1983, alleging violations by Defendants of his

First and Eighth Amendments in connection with the asserted failure to provide

adequate dental treatment of tooth abscesses, and an adequate law library to permit

Plaintiff to file a grievance regarding Defendants' denial of adequate medical care and

to challenge an earlier, unrelated conviction in Florida.[2]  By leave of the court granted

January 18, 2017 (Dkt. 128), on January 19, 2017, Plaintiff filed the Amended

Complaint (Dkt. 129) ("Amended Complaint").  Defendants to this action include Nurse

Schinski ("Schinski"), Nurse Yunker ("Yunker"), Chief Deputy Yasso ("Yasso"), Corporal

Slocum ("Slocum"), Deputy Forrester ("Forrester"), Correct Care Solution, Inc. ("CCS"),

Correctional Medical Care, Inc. ("CMC"), Dr. Maximillian Chung ("Dr. Chung"), and Dr.

Charles Thomas ("Dr. Thomas").[3]

On December 20, 2017, Defendants Forrester, Schinski, Slocum, Yasso and

Yunker ("Moving Defendants" or "Defendants"), filed a motion to dismiss or for summary

judgment (Dkt. 188) ("Defendants' Motion"), attaching Moving Defendants' Statement of

---

[1] Although the motion to dismiss or for summary judgment is dispositive, whereas the motion for sanctions is nondispositive, both motions are addressed in this combined Report and Recommendation/Decision and Order in the interests of judicial economy and clarity.

[2] The precise nature of the Florida conviction and Plaintiff's challenge to the same is not clearly stated in the record.

[3] In a Decision and Order filed March 17, 2015 (Dkt. 4), District Judge Arcara dismissed with prejudice the action as against Livingston County, Monroe County, Livingston County Jail, and Monroe County Jail, all of whom were also sued as Defendants.

Undisputed Material Facts (Dkt. 188-1) ("Defendants' Statement of Facts"), Defendants'

Appendix to Local Rule 56 Statement of Material Facts (Dkt. 188-2), with exhibits A

through E (Dkt. 188-3), F through J (Dkt. 188-4), and K through P (Dkt. 188-5), and the

Memorandum of Law in Support of Defendants' Motion to Dismiss and/or for Summary

Judgment (Dkt. 188-6) ("Defendants' Memorandum").  On January 4, 2018, Plaintiff filed

a motion for sanctions (Dkt. 198) ("Plaintiff's Motion"), attaching Plaintiff's Affirmation in

Support of Motion ("Plaintiff's Affirmation"), Plaintiff's Response to Undisputed Facts

("Plaintiff's Statement of Facts"), and exhibits A through C ("Plaintiff's Exh(s). __").

On June 5, 2018, Moving Defendants filed the Declaration of Ryan G. Smith,

Esq. (Dkt. 225) ("Smith Declaration"), attaching exhibit A (Dkt. 225-1) ("Smith

Declaration Exh. A").  On June 6, 2018, Plaintiff filed the Declaration of Plaintiff

Opposing Summary Judgment (Dkt. 226) ("Plaintiff's Declaration").  On June 20, 2018,

Moving Defendants filed the Reply Declaration of Ryan G. Smith, Esq. (Dkt. 227)

("Smith Reply Declaration"), with exhibit A (Dkt. 227-1) ("Smith Reply Declaration Exh.

A"), and the Reply Memorandum of Law in Further Support of Defendants' Motion to

Dismiss and/or for Summary Judgment (Dkt. 227-2) ("Defendants' Reply").  On June 28,

2018, Plaintiff filed the Response to Reply Declaration of Ryan G. Smith, Esq. (Dkt.

228) ("Plaintiff's Sur-Reply").  Oral argument was deemed unnecessary.

Based on the following, Defendants' Motion should be GRANTED, and the action

should be DISMISSED as against Moving Defendants; alternatively, Defendants' Motion

should, on qualified immunity grounds, be DENIED in part and GRANTED in part;

Plaintiff's Motion is DENIED.

<u>**FACTS**</u>[4]

**Dental Health Issue**

From October 19, 2012, to February 12, 2014, Plaintiff Robert Swinton ("Plaintiff" or "Swinton"), was held as a pre-trial detainee in Monroe County Jail ("Monroe County Jail"), pending trial on federal criminal charges. As a federal pre-trial detainee, Plaintiff, pursuant to a policy maintained by the United States Marshal Service ("USMS"), could obtain medical treatment from an outside health care provider, in this case, Defendant Correctional Medical Care, Inc. ("CMC"),[5] only if such treatment was deemed medically necessary by USMS, except where emergency medical care that could not be provided by the jail facility's medical staff was required. In December 2012, while housed in Monroe County Jail, Plaintiff complained of an oral abscess for which Plaintiff requested medical care. According to Plaintiff, although multiple medical requests for dental care were submitted by the Monroe County Jail's medical staff, the necessary medical care was repeatedly postponed or denied by USMS and CMC, until after Plaintiff was transferred from Monroe County Jail.

On February 12, 2014, Plaintiff was transferred from Monroe County Jail to Livingston County Jail ("the Jail"), where he remained until October 8, 2015. Upon being admitted to the Jail, on February 13, 2014, Defendant Nurse Ann Schinski

---

[4] Taken from the pleadings and motion papers filed in this action.

[5] Although "Correct Care Solution/Correctional Medical Care Inc." is named as a Defendant in the Amended Complaint, Correct Care Solution ("CCS"), has provided undisputed evidence, that CCS did not commence providing healthcare services at Monroe County Jail until January 1, 2015, almost a year after Plaintiff was transferred from this facility. *See* Dkt. 172-2 (Affidavit of Monroe County Jail Superintendent Ronald W. Harling averring CCD did not commence providing healthcare services to inmates at Monroe County Jail until January 1, 2015), and Dkt. 183 (Declaration of James H. Cosgriff, III, Esq., averring Defendant Correctional Medical Care, Inc. ("CMC"), and not CCS, provided inmate healthcare services at Monroe County Jail during the relevant period of time). In papers filed October 3, 2017 (Dkt. 177 at 3), Plaintiff indicated he did not object to the dismissal of CCS as a defendant to this action. Accordingly, the court references only CMC as the healthcare provider at Monroe County Jail.

("Schinski"), completed a nursing assessment of Plaintiff during which Plaintiff made no complaints regarding his mouth or teeth, but reported a dental cap on his left canine tooth fell off. Nursing Assessment[6] at Bates 000182. On April 14, 2014, Plaintiff complained of a gum infection characterized by a red, raised, draining area in his left lower gum, for which Schinski prescribed antibiotics. Inmate Progress Notes ("IPN")[7] at Bates 000291. In a Health Care Request Form dated February 15, 2014, Plaintiff wrote he "was in line for a tooth extraction in [Monroe County Jail]. I still need one." Health Care Request Forms[8] at Bates 000223. Plaintiff further indicated he had the dental problem since 2012. *Id.* In a Health Care Request Form dated April 13, 2014, Plaintiff described his toothache as "turning from a dull ache and daily getting worse." *Id.* at Bates 000172. On April 24, 2014, Plaintiff stated he was "still having the same problem. Don't think the antibiotics worked." *Id.* at Bates 000171.

On April 28, 2014, Plaintiff's left lower gum line was less inflamed, but still present and Plaintiff was provided with a hydrogen peroxide mouth rinse ("mouth rinse"). IPN at Bates 000291. On May 22, 2014, Plaintiff complained of pus emanating from his gums, the infection was still present, and he had run out of the mouth rinse, indicating his dental problem had persisted for more than one year, having first occurred when he was housed in Monroe County Jail. Health Care Request Forms at Bates 000169. On May 28, 2014, Plaintiff's left lower gum line was not inflamed and without drainage, but additional mouth rinse was provided because Plaintiff reported it was draining pus a few days earlier. IPN at Bates 000291. On July 1, 2014, Plaintiff's

---

[6] Defendants' Exh. P (Dkt. 188-5 at 69-71).
[7] Defendants' Exh. L (Dkt. 188-5 at 12-16.
[8] Defendants' Exh. N (Dkt. 188-5 at 41-62).

prescription-strength Ibuprofen was discontinued for non-use, and Plaintiff was advised he could take over-the-counter Ibuprofen. *Id.* On July 14, 2014, Plaintiff requested additional mouth rinse. Health Care Request Form at Bates 000165. On July 16, 2014, Plaintiff returned his empty mouth rinse container and additional mouth rinse was issued. IPN at bates 000291.

On August 5, 2014, Plaintiff complained of a toothache and "exposed nerve," asserting he believed a "filling is out of place." Health Care Request Forms at Bates 000162. On August 7, 2014, Plaintiff complained to Defendant Nurse Gail Yunker ("Yunker") of intermittent dental pain in tooth # 19,[9] in which Plaintiff had a temporary filling, and which was helped by using the mouth rinse. IPN at Bates 000291. Yunker authorized Plaintiff to receive additional Ibuprofen and submitted a request to the USMS for a dental appointment for tooth extraction, indicating the request was "urgent," *i.e.*, should be scheduled within two weeks. *Id.*; Prisoner Medical Requests[10] at 000157. The USMS granted the request, indicating the urgency of the request required treatment within two to six weeks. IPN at Bates 000291; Prisoner Medical Requests at Bates 000158.

On September 10, 2014, Plaintiff complained about a toothache and abscess which had bothered him for a year and a half. Health Care Request Forms at Bates 000163. On September 11, 2014, Plaintiff was examined by Dr. C. Terry Washburn, DDS ("Dr. Washburn"), who gave Plaintiff a choice between having the abscessed tooth

---

[9] Pursuant to the American Dental Association's Universal Tooth Numbering System of teeth, tooth number 19 is in the lower portion of the jaw on the left toward the back of the mouth. *See* https://www.ada.org/en/publications/cdt/glossary-of-dental-clinical-and-administrative-terms, *last visited* September 27, 2018. Tooth # 19 is also referred to as the lower left first molar. *See* http://www.onlinemd.net/toothnumbersdiagram.html, *last visited* September 27, 2018.
[10] Plaintiff's Exh. O (Dkt. 188-5 at 63-68).

extracted, or undergoing a root canal procedure.  IPN at Bates 000291-292.  Plaintiff

then refused the tooth extraction, and Dr. Washburn prescribed amoxicillin, opining

Plaintiff should have the root canal.  *Id.*  Plaintiff was advised the USMS needed to

approve the root canal, and Yunker sent the USMS a Prisoner Medical Request for the

root canal.[11]  IPN at Bates 000292.  On September 15, 2014, Plaintiff reported to R.N.

H. Braaten ("Braaten"),[12] the antibiotic helped alleviate the dental pain, and Braaten

discussed with Plaintiff alternating over-the-counter Tylenol and Ibuprofen, advising the

USMS had yet to approve the root canal request.  *Id.*

On September 26, 2014, Plaintiff complained of a toothache which was starting

to abscess again, adding a piece of a temporary filling was missing.  Health Care

Request Forms at Bates 000160.  On September 29, 2014, Braaten reported a piece of

Plaintiff's filling fell out, causing Plaintiff to worry about infection.  IPN at Bates 000291.

Braaten dispensed additional mouth rinse and allowed Plaintiff to reapply dentemp

(over-the-counter dental cement for temporary tooth patch of lost filling).  On November

10, 2014, Schinski refilled Plaintiff's mouth rinse.  *Id.*  On November 20, 2014, Plaintiff

reported his tooth was abscessed again, asserting he was on the list maintained by the

USMS to receive dental care.  Health Care Request Forms at Bates 000143.

According to a Prisoner Medical Request dated November 24, 2014, Plaintiff

refused to have his tooth extracted and requested a root canal.  Prisoner Medical

Requests at Bates 000234.  *See* IPN at Bates 000292 (noting on September 11, 2014,

Plaintiff refused the tooth extraction by Dr. Washburn, opting for a root canal for which

USMS approval was required, and Plaintiff was placed on additional antibiotics).  The

---

[11] No copy of any Prisoner Medical Request sent at this time is in the record.
[12] Braaten is not named as a Defendant to this action.

urgency of the request required treatment within two to six weeks. Prisoner Medical Requests at Bates 000234. Because the USMS was not authorized to deny medical requests, the request was referred to the USMS Officer of Interagency Medical Services ("OIMS"). *Id.*

On December 3, 2014, Plaintiff reported he was "abscessing from the gums again," that he showed the pus to a deputy sheriff, and that despite repeated promises, he had yet to receive the required dental care. Health Care Request Forms at Bates 000144. An examination revealed "a white bump at gumline" for which an unidentified medical doctor was notified, who prescribed an antibiotic on December 4, 2014. IPN at Bates 000292. On December 5, 2014, Yunker sent Plaintiff's IPNs to the USMS along with a doctor's note recommending treatment. *Id.*

On December 12, 2014, Plaintiff reported he still had pain coming from his gums which remained infected. Health Care Request Forms at Bates 000140. On December 19, 2014, Plaintiff submitted a slip complaining of infected and painful gums, and his left lower mouth was noted to have a filling that was red at the gum base. IPN at Bates 000292. Plaintiff reported waking up in the morning with pus in his mouth. *Id.* Nurse M. Candie ("Candie")[13] requested Plaintiff's antibiotic be renewed, told Plaintiff to continue rinsing with hydrogen peroxide, provided Plaintiff with orajel, and contacted a physician for further instructions. *Id.* The physician denied the request for additional antibiotics, advising Plaintiff continue using the mouth rinse. *Id.* On December 26, 2014, Plaintiff submitted Grievance No. 14-39 ("Grievance 14-39"),[14] at Bates 000248, complaining the Jail's medical staff discontinued the pain medication and mouth rinse

---

[13] Candie is not named as a Defendant to this action.
[14] Copies of Plaintiff's Grievances are filed as Defendants' Exh. M (Dkt. 188-5 at 17-40).

prescribed for Plaintiff's tooth abscess. On December 29, 2014, the Jail's Grievance Coordinator determined that Plaintiff's failure to return the empty mouth rinse container resulted in denying the request for more mouth rinse. *Id.* Plaintiff appealed the decision to the Chief Administrative Officer who investigated and determined Plaintiff was denied additional mouth rinse because Plaintiff failed to return the empty container, but that upon returning the empty container, Plaintiff was promptly issued more mouth rinse, and that Plaintiff's prescription Ibuprofen was discontinued because Plaintiff had ceased taking it. *Id.* The Chief Administrative Officer further noted the Jail's medical staff was awaiting approval from the USMS for Plaintiff's root canal. *Id.* On December 29, 2014, Plaintiff reported his tooth was abscessed, the "pain has been extreme," and the problem existed for two years. Health Care Request Form at Bates 000141. On December 30, 2014, Plaintiff followed up with his dental appointment request, but denied any dental pain that day. IPN at Bates 000292. That same day, Plaintiff also received a refill of his mouth rinse and Ibuprofen. Grievance 14-39 at Bates 000250.

On January 5, 2015, Yasso, in the course of investigating Grievance 14-39, learned Plaintiff had been denied additional mouth rinse because he had failed to return the container in which the mouth rinse was dispensed, but that Plaintiff had since returned the container and received the mouth rinse Ibuprofen, and also personally telephoned the USMS regarding the request for Plaintiff's root canal. Declaration of Livingston County Jail Chief Deputy Jason Yasso (Defendant's Exh. B)[15] ("Yasso Declaration"), ¶¶ 18-20 (citing Grievance 14-39 at Bates 000249). That same day,

---

[15] Dkt. 188-3 at 7-15.

Candie also spoke with USMS regarding Plaintiff's dental request and re-sent the request.  IPN at Bates 000292.

On January 16, 2015, Plaintiff requested a refill of his mouth rinse.  Health Care Request Form at Bates 000237.  On January 23, 2015, OIMS approved Plaintiff's request for a root canal.[16]  Prisoner Medical Requests at Bates 000234.  On January 27, 2015, Plaintiff's root canal procedure was scheduled for February 4, 2015.  IPN at Bates 000293.

On February 2, 2015, Plaintiff reported "abscess in my gums again.  Severe pain at night, moderate during the day.  Infected again."  Health Care Request Forms at Bates 000227.  Plaintiff indicated the problem had persisted for two years.  *Id.*  Candie examined Plaintiff's mouth, observing swelling in right lower gum, redness and a small open area, white in the center, which Plaintiff reported was draining.  *Id.*  A physician contacted by Candie regarding Plaintiff's gum ordered amoxicillin.  *Id.*  Because of a conflicting court appearance, Plaintiff's dental appointment, originally scheduled for February 4, 2015, was rescheduled for February 18, 2015.  Yasso Declaration ¶ 21.  On February 12, 2015, Plaintiff filed Grievance No. 15-3 ("Grievance 15-3"), at Bates 000255, complaining Yunker would not provide Plaintiff with his mouth rinse and stating Plaintiff did not wish to see Yunker as a Jail Nurse again.  Upon investigation, the Grievance Coordinator, on February 13, 2013, determined the issue regarding the mouth rinse had been resolved and Plaintiff had a personality conflict with Yunker.  *Id.*

---

[16] Although on August 7, 2014, Plaintiff's diseased tooth was indicated as # 19, IPN at Bates 000291, the root canal was approved for tooth # 22, which is also referred to as the lower left canine.  *See* http://www.onlinemd.net/toothnumbersdiagram.html, *last visited* September 27, 2018.  Because the record is devoid of any explanation for the disparity, the court is unable to definitively state the diseased tooth for which the root canal was approved on January 23, 2015, is the same tooth of which Plaintiff complained on August 7, 2014.

at Bates 000256.  Plaintiff appealed the determination to the Chief Administrative Officer who, on February 16, 2015, concurred with the Grievance Coordinator, adding that further action regarding Plaintiff's personality conflict with Yunker was outside the Chief Administrative Officer's authority given that the Jail's nursing services were provided pursuant to a contract with Livingston County Public Watch, the entity to whom Plaintiff should direct any further complaint, and Plaintiff was provided with the information to file such a complaint regarding Yunker.  *Id.*

At some time between receiving approval for the root canal procedure and the actual procedure being performed, Yasso was advised by the USMS of plans to transfer Plaintiff to another facility, but upon Yasso's request, the USMS permitted Plaintiff to remain in the Jail until Plaintiff underwent the root canal procedure.  Yasso Declaration ¶ 31.  On February 18, 2015, Plaintiff underwent the root canal procedure.  IPN at Bates 000293.

**Legal Resources Issue**

In September 2014, a kiosk machine ("the kiosk"), providing inmates with access to LexisNexis, an on-line database for conducting legal research, was installed at the Jail.  On September 6, 2014, before the kiosk was fully operational, Plaintiff filed Grievance No. 14-25 ("Grievance 14-25"), at Bates 000252, complaining the Jail provided no federal legal resources, indicating Plaintiff preferred the Jail maintain a library of legal books.  On September 10, 2014, the kiosk became fully operational and available to all inmates, Yasso Declaration ¶ 15, and on September 11, 2014, the Jail's Grievance Coordinator issued a decision that Grievance 14-25 was considered rectified.  Grievance 14-25 at Bates 000253.  Plaintiff appealed the decision to the Jail's Chief

Administrative Officer who, on September 12, 2014, concurred with the Grievance Coordinator that Grievance 14-25 was rectified by the fully operational kiosk. *Id.* On September 16, 2014, Plaintiff stated he wished to appeal the decision to the Citizen's Policy and Complaint Review Council ("CPCRC"),[17] but a further notation on Grievance 14-25 indicates Plaintiff verbally agreed the grievance had been rectified, *id.*, and Grievance 14-25 was not forwarded to CPCRC. Plaintiff claims that prior to the kiosk becoming fully operational, Defendants Corporal Slocum and Deputy Forrester denied Plaintiff's requests for the training necessary for using the LexisNexis system, as well as for legal materials. Amended Complaint ¶¶ 52-61.

## DISCUSSION

### 1.    Summary Judgment

Moving Defendants argue in support of summary judgment[18] that Plaintiff cannot demonstrate a denial of access to the courts in violation of the First Amendment, Defendants' Memorandum at 4-8, Plaintiff's First Amendment claim relating to his Grievances have no factual or legal basis, *id.* at 8-12; Plaintiff did not suffer from any serious medical condition to which Defendants were deliberately indifferent, *id.* at 12-18; Yasso was not sufficiently personally involved to be held liable for Plaintiff's denial of medical treatment claim, *id.* at 18-19; any claims asserted in the Amended Complaint

---

[17] Although not further identified in the record, CPCRC appears to be an entity within the Livingston County Jail whose authority is also not described.

[18] Although Defendants' Motion seeks to dismiss for failure to state a claim or, alternatively, for summary judgment, Defendants' Memorandum at 2-4, Moving Defendants' reliance on numerous declarations and exhibits renders the more appropriate to review Defendants' Motion for summary judgment and, thus, a determination on the merits, than to dismiss for failure to state a claim, which is not a determination on the merits and would ordinarily, if granted, be without prejudice and with leave to replead. *See Global Network Communications, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006) (reviewing distinction between dismissal for failure to state a claim and determination on summary judgment).

that were previously dismissed with prejudice must be dismissed here, *id.* at 19; Plaintiff fails to sufficiently allege a Fourteenth Amendment equal protection claim, *id.* at 20; and Moving Defendants are qualifiedly immune from liability on all claims. *Id.* at 20-25. In opposition to summary judgment, Plaintiff filed a motion for sanctions asserting he never authorized Moving Defendants' attorney Ryan G. Smith, Esq. ("Smith"), to forward to third parties or otherwise disclose Plaintiff's unredacted medical records and that such disclosure was "blatantly unethical" and in violation of privacy laws under the Health Insurance Portability and Accountability Act of 1996, 42 U.S.C. § 1320d, *et. seq.* ("HIPAA"),[19] requiring sanctions against Moving Defendants. Plaintiff's Affirmation at 1-2. Plaintiff also contests numerous facts as alleged in Defendants' Statement of Facts. Plaintiff's Statement of Facts. In further support of summary judgment, Moving Defendants argue Plaintiff's papers opposing summary judgment fail to comply with the Local Rules of Civil Procedure, particularly Local Rule 56(a)(2), fail to address numerous facts and arguments set forth in Moving Defendants' moving papers, and fail to establish any issue of material fact exists requiring trial on any of Plaintiff's claims. Defendants' Reply at 1. In further opposition, Plaintiff maintains his opposing Statement of Facts establishes numerous disputed issues of fact requiring trial. Plaintiff's Sur-Reply at 1-4.

Summary judgment of a claim or defense will be granted when a moving party demonstrates that there are no genuine issues as to any material fact and that a moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a) and (b); *Celotex*

---

[19] As relevant here, HIPAA, and the regulations promulgated thereunder, prohibits the disclosure of patients' medical records without the patients' consent subject to exception as by way of court order. 42 U.S.C. § 1320d-6; 45 C.F.R. § 164.512.

*Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250-51 (1986); *Miller v. Wolpoff & Abramson, L.L.P.*, 321 F.3d 292, 300 (2d Cir. 2003).  The court is required to construe the evidence in the light most favorable to the non-moving party.  *Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).  The party moving for summary judgment bears the burden of establishing the nonexistence of any genuine issue of material fact and if there is any evidence in the record based upon any source from which a reasonable inference in the non-moving party's favor may be drawn, a moving party cannot obtain a summary judgment.  *Celotex*, 477 U.S. at 322; *see Anderson*, 477 U.S. at 247-48 ("summary judgment will not lie if the dispute about a material fact is "genuine," that is, if the evidence is such that a reasonable jury could return a verdict for the nonmoving party").  "A fact is material if it 'might affect the outcome of the suit under governing law.'"  *Roe v. City of Waterbury*, 542 F.3d 31, 35 (2d Cir. 2008) (quoting *Anderson*, 477 U.S. at 248).

"[T]he evidentiary burdens that the respective parties will bear at trial guide district courts in their determination of summary judgment motions."  *Brady v. Town of Colchester*, 863 F.2d 205, 211 (2d Cir. 1988)).  A defendant is entitled to summary judgment where "'the plaintiff has failed to come forth with evidence sufficient to permit a reasonable juror to return a verdict in his or her favor on'" an essential element of a claim on which the plaintiff bears the burden of proof.  *In re Omnicom Group, Inc., Sec. Litig.*, 597 F.3d 501, 509 (2d Cir. 2010) (quoting *Burke v. Jacoby*, 981 F.2d 1372, 1379 (2d Cir. 1992)).  Once a party moving for summary judgment has made a properly supported showing of the absence of any genuine issue as to all material facts, the nonmoving party must, to defeat summary judgment, produce evidence that would be

sufficient to support a jury verdict in its favor. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir. 1995). Any "disputed questions of material fact [however] should be resolved by a jury at trial, not by a court at summary judgment." *Dufort v. City of New York*, 874 F.3d 338, 349-50 (2d Cir. 2017) (quoting *Anderson*, 477 U.S. at 255 ("Credibility determinations, the weighing of evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge . . . [when] he is ruling on a motion for summary judgment. . . .") (bracketed material in original)). "[F]actual issues created solely by an affidavit crafted to oppose a summary judgment motion are not 'genuine' issues for trial." *Hayes v. New York City Dept. of Corrections*, 84 F.3d 614, 619 (2d Cir. 1996). Furthermore, "[a]lthough summary judgment is proper where there is 'nothing in the record to support plaintiff's allegations other than plaintiff's own contradictory and incomplete testimony,' district courts should not 'engage in searching, skeptical analyses of parties' testimony in opposition to summary judgment.'" *Rivera v. Rochester Genesee Regional Transp. Authority*, 743 F.3d 11, 20 (2d Cir. 2014) (quoting *Jeffreys v. City of New York*, 426 F.3d 549, 555 (2d Cir. 2005), and *Rojas v. Roman Catholic Diocese of Rochester*, 660 F.3d 98, 106 (2d Cir. 2011)).

## A.    28 U.S.C. § 1983

Plaintiff's claims seek damages for alleged violations of constitutional rights pursuant to 42 U.S.C. § 1983 ("§ 1983"), which imposes civil liability upon persons who, acting under color of state law, deprive an individual of rights, privileges, or immunities secured by the Constitution and laws of the United States. Section 1983, however, is not itself a source of substantive rights but, rather, provides the mechanism by which a plaintiff may seek vindication of federal rights elsewhere conferred. *Graham v. Connor*,

490 U.S. 386, 393-94 (1989). Here, the federal rights for the alleged violation of which Plaintiff seeks relief under § 1983 include the First, Eighth and Fourteenth Amendments. Furthermore, for relief under § 1983, a plaintiff must establish the defendant was personally involved in the alleged deprivation. *Warren v. Pataki*, 823 F.3d 125, 136 (2d Cir. 2016) ("To establish a section 1983 claim, 'a plaintiff must establish a given defendant's personal involvement in the claimed violation in order to hold that defendant liable in his individual capacity.'" (quoting *Patterson v. County of Oneida, N.Y.*, 375 F.3d 206, 229 (2d Cir. 2004))).

### 1. Access to Courts

Plaintiff claims that without a legal library, the only means by which he and other inmates could research federal law was by using the LexisNexis kiosk,[20] which did not provide any means to print the research, requiring a separate request for print materials be made to Jail officials, resulting in significant delay in receiving the materials. Plaintiff's Statement of Facts ¶¶ 61-62. In support of summary judgment, Moving Defendants argue Plaintiff cannot demonstrate he suffered any actual injury caused by the lack of adequate legal resources at the Jail, Defendants' Memorandum at 4-6, Plaintiff has been represented by counsel throughout his federal criminal proceedings, *id.* at 6-7, requiring the claims be dismissed as against Defendants Corporal Slocum ("Slocum"), and Deputy Forrester ("Forrester"), *id.* at 7-8, the denial of the right to appeal a grievance is not a constitutional violation, *id.* at 8, and even construing Plaintiff's denial of the right to appeal his grievances as alleging retaliation, such claim must be denied for lack of the requisite adverse action and causal connection. *Id.* at 9-

---

[20] Plaintiff was there facing the pending federal narcotics trafficking and firearms possession charges.

12.  In opposing summary judgment, Plaintiff essentially relies on disputed facts including that the "runner system" used in place of an actual law library at the Jail by which an inmate can obtain legal research materials only by providing Jail facility officers with case citations and awaiting the retrieval of the requested information "has been deemed illegal for decades," Plaintiff's Statement of Facts ¶ 61, and that the cases and federal treatise Plaintiff requested to challenge his prior conviction in the State of Florida by a *coram nobis* petition were not timely provided, thereby depriving Plaintiff of his right to self-representation which was critical given that Plaintiff's court-appointed counsel was ineffective, resulting in Plaintiff failing to oppose being sentenced as a career offender. *Id.* ¶¶ 61-69.  In further support of summary judgment, Moving Defendants reiterate that since entering the Jail in October 2012, Plaintiff's continuous representation by counsel with respect to his criminal matters renders this claim without merit, Defendants' Reply at 4, that the prior sentence Plaintiff seeks to challenge as the basis for his career offender status was imposed in January 2002, well prior to the alleged denial of access to legal resources, *id.* Plaintiff fails to distinguish the legal authority on which Moving Defendants rely, *id.* at 4-5, requiring the claims be dismissed as against Defendants Slocum and Forrester, *id.* at 5, nor has Plaintiff countered Moving Defendants' argument that Plaintiff has no constitutional right to appeal a grievance, *id.*, and that Plaintiff fails to allege any adverse action or causal connection to support any First Amendment retaliation claim.  *Id.* at 5-6.

Plaintiff's claim that the Jail's law library and legal assistance were inadequate to permit Plaintiff to pursue "post-conviction relief" asserts a violation of his constitutional guarantee of the right of access to the courts for redress of grievances as provided by

the First, Fifth, and Fourteenth Amendments. *See Christopher v. Harbury*, 536 U.S. 403, 415 n. 12 (2002) (observing, in various civil and criminal cases, the right of access to the courts is grounded in Article IV's Privileges and Immunities Clause of the Constitution, the First Amendment's Petition Clause, and in the Due Process Clauses of the Fifth and Fourteenth Amendments). It is settled that "meaningful access to the courts is the touchstone" of the First Amendment as regards litigation commenced by a prison inmate. *Bounds v. Smith*, 430 U.S. 817, 823 (1977) ("*Bounds*"). "The point is to provide prisoners with the tools they 'need in order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement.'" *Bourdon v. Loughren*, 386 F.3d 88, 93 (2d Cir. 2004) (quoting *Lewis v. Casey*, 518 U.S. 343, 355 (1996), and citing *Bounds*, 430 U.S. at 825 (stating that the relevant inquiry is whether the inmate has 'a reasonably adequate opportunity to present claimed violations of fundamental constitutional rights to the courts")). "[T]he right has particular application to prisoners seeking access to the courts, where they are defending against criminal charges, challenging convictions and sentences, and raising civil rights claims against the conditions of their confinement." *Bourdon*, 386 F.3d at 92 n. 8 (citing *Lewis*, 518 U.S. at 355, and *Bounds*, 430 U.S. at 825).

Although under *Bounds*, prison officials have an affirmative duty to provide constitutionally adequate access to the courts such that where an inmate alleges, *e.g.*, inadequate law libraries, the inmate need not show any actual injury, *Bounds*, 430 U.S. at 829; where, however, as here, an inmate is represented by counsel, the inmate cannot establish a denial of access to courts claim based on allegations that the correctional facility had inadequate legal resources for the inmate's use. *See Bourdon*,

386 F.3d at 93-94 ("the appointment of counsel can be a valid means of fully satisfying a state's constitutional obligation to provide prisoners, including pretrial detainees, with access to the courts"). "[W]hen a prisoner with appointed counsel claims that he was hindered by prison officials in his efforts to defend himself or pursue other relevant legal claims, he must show that, on the facts of his case, the provision of counsel did not furnish him with the capability of bringing his challenges before the courts, . . . ." *Id.* at 98.

Plaintiff's access to court claim pertains to his prior convictions in Florida State Court, based on which Plaintiff was sentenced for his most recent Florida conviction as a career criminal. In particular, on November 3, 1994, Plaintiff, having entered in Florida's 10th Circuit Court, Polk County ("the Florida Circuit Court"), a plea of no contest to armed robbery in violation of Florida law ("armed robbery conviction"), was sentenced to five years imprisonment, followed by ten years probation. *See* Dkt. 198 at 20. Plaintiff timely appealed the conviction in Florida's Second District Court of Appeal where the conviction was affirmed on March 29, 1996, but several provisions of the sentence pertaining to fines, costs, and probation conditions were stricken as imposed in violation of applicable Florida criminal procedure laws. *Swinton v. State*, 670 So.2d 1128, 1129 (Fla. 2d Dist. Ct. App. 1996). Plaintiff remained incarcerated on the armed robbery conviction until he was released on probation on October 31, 1997. On January 24, 2002, Plaintiff, who had been arrested in New York pursuant to a warrant and extradited to Florida where the violation of probation complaint was lodged against him, appeared in Florida Circuit Court, Polk County, represented by assigned counsel.[21]

---

[21] The nature of the asserted probation violation is not specified in the record.

Dkt. 198 at 21.  After some questioning of Plaintiff, the court found Plaintiff guilty without

a written plea agreement or any inquiry of Plaintiff under oath or obtaining Plaintiff's

waiver of constitutional rights.  *Id.* at 21-22.  Without Plaintiff or his attorney being

permitted to speak, Plaintiff was sentenced for the probation violation to 72 months

imprisonment (second conviction), *id.* at 22, and Plaintiff did not appeal the conviction.

*Id.*  On October 19, 2012, Plaintiff was arrested by federal law enforcement agents in

the Northern District of New York and charged with violating federal drug trafficking and

firearms possession laws.  Plaintiff maintains that because of the two prior convictions

in Florida, Plaintiff was subject under Florida law to Armed Career Criminal and Career

Offender sentencing enhancements, resulting in a mandatory life sentence without

parole.[22]  Plaintiff's Statement of Facts ¶¶ 61-68.  On June 20, 2014, Plaintiff,

represented by court appointed criminal attorney Patrick Michael Megaro, Esq.

("Megaro"), moved in Florida Circuit Court, Polk County, pursuant to Florida Rule of

Criminal Procedure 3.800(a), (b), and 3.850, for a court order correcting Plaintiff's prison

sentence imposed January 24, 2002 with regard to the second conviction ("motion to

correct sentence"), but because the second conviction was never appealed, on July 1,

2014, the motion was denied as untimely.  *See State v. Swinton*, No. 94CF-2464-XX,

slip op. at 1-2 (Fla. 10th Cir., Polk Cty. July 1, 2014) (unpublished).[23]  On April 1, 2015,

Plaintiff, proceeding *pro se*, filed in Florida's Second District Court of Appeal a Petition

for a Writ of Error Coram Nobis under Florida law ("*Coram Nobis* Petition"),[24] asserting

Megaro, in filing the motion to correct sentence, challenged under Florida law only the

---

[22] Whether a Florida sentencing enhancement statute may be considered in imposing a criminal sentence
in federal court is not addressed in the papers.
[23] Dkt. 198 at 27-28.
[24] Dkt. 198 at 29-40.

constitutionality of the sentence imposed for the second conviction, but did not challenge the actual conviction based on a faulty guilty plea conducted by the Florida Circuit Court. *Coram Nobis* Petition at 4. Petitioner then made several arguments challenging the procedure by which the second conviction was procured, asserting each alleged violation rendered the second conviction and, thus, the sentence imposed, in violation of due process. *Id.* at 5-9. On June 8, 2015, Plaintiff's Coram Nobis Petition was denied, *Swinton v. State*, 207 So.3d 235 (Fla. 2d Dist. Ct. App. 2015) (table), and was further dismissed upon appeal to the Florida Supreme Court. *Swinton v. State*, 192 So.3d 42 (Fla. 2015). On December 20, 2017, Plaintiff received his current federal sentence, such sentence being enhanced in light of Plaintiff's career offender status based on the first and second convictions in Florida. Plaintiff's Statement of Facts ¶ 61.

With regard to Plaintiff's assertion that he was denied self-representation in his criminal matter, particularly, the ability to challenge consideration of prior convictions resulting in being sentenced as a career offender on the subsequent federal conviction, the record establishes Plaintiff raised such challenge in his *pro se Coram Nobis* Petition, which was considered and denied by both the Florida District Court of Appeal and the Florida Supreme Court, significantly, more than one year prior to Plaintiff being sentenced on the federal conviction December 20, 2017, further undermining Plaintiff's contention that he was deprived of any right of access to court to challenge his prior convictions before imposition of his federal sentence. As such, Plaintiff cannot point to any actual denial of legal rights in the criminal context of Plaintiff's prior Florida state conviction based on the asserted constitutionally deficient legal resources at the Jail, and summary judgment on this claim should be GRANTED.

Nor is there any merit to Plaintiff's challenge that the Jail's deficient legal resources impeded Plaintiff's appeal of inmate grievances at the Jail because "'[although] there is a First Amendment right of meaningful access to the courts and a right to petition the government for redress, inmate grievance procedures are not required by the Constitution and therefore a violation of such procedures does not give rise to a claim under § 1983.'" *Crichlow v. Fischer*, 2017 WL 920753, at * 7 (W.D.N.Y. Mar. 7, 2017) (quoting *Cancel v. Goord*, 2001 WL 303713, at *3 (S.D.N.Y. Mar. 29, 2001)). Accordingly, because Plaintiff has no constitutionally protected interest in the Jail's grievance program, even if Moving Defendants failed to provide the necessary legal resources to effectively make use of such program, no valid § 1983 claim would lie. *See id.* (holding that because the inmate plaintiff had no protected liberty interest in prison grievance program, the defendant prison employees' alleged violation of their own grievance processing procedures did not give rise to a § 1983 claim). Summary judgment on Plaintiff's access to court claim based on the alleged interference with filing appeals of his inmate grievances should thus be GRANTED.

The record is further devoid of any evidence establishing a valid First Amendment retaliation claim based on Plaintiff's filing of grievances directed to access to legal research materials at the Jail. To prevail on a First Amendment retaliation claim under § 1983, a prisoner must demonstrate "(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected speech and the adverse action." *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009) (internal quotation marks and citation omitted). "Only retaliatory conduct that would deter a similarly situated

individual of ordinary firmness from exercising his or her constitutional rights constitutes an adverse action for a claim of retaliation." *Dawes v. Walker*, 239 F.3d 489, 493 (2d Cir. 2001), *overruled on other grounds*, *Swiekiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002). "This objective inquiry is not static across contexts, but rather must be tailored to the different circumstances in which retaliation claims arise." *Id.* (internal quotation marks and citation omitted).

In the instant case, Plaintiff's filing of the various grievances complaining of the Jail's legal resources and medical treatment qualified as protected activity under the First Amendment, thereby satisfying the first element of a First Amendment retaliation claim. *Dawes*, 239 F.3d at 492. Plaintiff, however, points to no adverse action taken by Moving Defendants against him, let alone any "retaliatory conduct that would deter a similarly situated individual of ordinary firmness from exercising his or her constitutional rights," as required for the second element of a First Amendment retaliation claim. *Id.* at 493. Moreover, Plaintiff also cannot establish any causal connection between a non-existing adverse action and Plaintiff's participation in protected activity. Accordingly, Defendants' Motion should be GRANTED as to Plaintiff's First Amendment retaliation claim.

### 2. Medical Indifference

Plaintiff alleges Defendants were deliberately indifferent to his abscessed tooth for which he was denied adequate medical treatment in violation of the Eighth and Fourteenth Amendments. Moving Defendants argue in support of summary judgment that Plaintiff did not suffer from a serious medical condition, nor were Moving Defendants deliberately indifferent to any such condition. Defendants' Memorandum at

12-18.  Alternatively, Moving Defendants argue Yasso lacked sufficient personal involvement to be held liable for any claim arising from Plaintiff's medical treatment.  *Id.* at 18-19.  In opposing summary judgment, Plaintiff essentially relies on his opposing statement of facts, especially that Plaintiff did not complain of a dull pain, as reported in his IPN, but of excruciating pain accompanied by pus oozing from his mouth, Plaintiff's Statement of Facts ¶ 43, yet the record fails to establish sufficient attempts by Moving Defendants to obtain approval for treatment from the USMS, *id.* ¶¶ 50, 56, 58, the number of sick call slips submitted by Plaintiff establish the seriousness of Plaintiff's dental problem, *id.* ¶ 59, yet notification to the USMS continued to be substantially delayed.  *Id.* ¶ 60.  In further support of summary judgment, Moving Defendants maintain that numerous, completely undisputed facts establish there is no merit to Plaintiff's deliberate indifference claim, supporting summary judgment.  Defendants' Reply at 6-8.

During the period of time relevant to this action, Plaintiff was detained at the Jail while awaiting trial on the federal charges then pending against him, on which Plaintiff was not convicted until July 2017, with his criminal sentence on the conviction imposed December 20, 2017.  As such, Plaintiff was a pretrial detainee at all times relevant to his deliberate indifference to serious medical need claim, requiring the claim be analyzed according to the Fourteenth Amendment's Due Process Clause, rather than under the Eighth Amendment's Cruel and Unusual Punishments Clause.  *See Darnell v. Pineiro*, 849 F.3d 17, 29 (2d Cir. 2017) (recognizing unconstitutional conditions of confinement claims brought by pretrial detainees are correctly analyzed under the Fourteenth Amendment).  This is because "'[p]retrial detainees have not been convicted of a crime

and thus may not be punished in any manner – neither cruelly and unusually or otherwise.'" *Id.* (quoting *Iqbal v. Hasty*, 490 F.3d 143, 168 (2d Cir. 2007) (further citation and quotation marks omitted)).  "A detainee's rights are 'at least as great as the Eighth Amendment protections available to a convicted prisoner.'" *Id.* (quoting *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 244 (1983)).

"A pretrial detainee may establish a § 1983 claim for allegedly unconstitutional conditions of confinement by showing that the officers acted with deliberate indifference to the challenged conditions."  *Darnell*, 849 F.3d at 29 (citing *Benjamin v. Fraser*, 343 F.3d 35, 50 (2d Cir. 2003)).  This showing requires satisfying two prongs or elements, with the first element "showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process," and the second element "better classified as a *'mens rea* prong' or 'mental element prong' – showing that the officer acted with at least deliberate indifference to the challenged conditions."  *Id.*  In the context of alleged deliberate indifference to a medical condition, the Plaintiff must establish he had a serious medical condition that was met with deliberate indifference. *Bruno v. City of Schenectady*, 727 Fed. Appx. 717, 720 (2d Cir. Mar. 16, 2018) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 106 (2d Cir. 2000)).  In the instant case, the record fails to establish either that the medical condition of which Plaintiff complained, that is, an abscessed tooth, was sufficiently serious as to satisfy the claim's first element, or any a genuine question of material fact regarding the second element so as to avoid summary judgment.

In particular, the first element is the same under the Fourteenth Amendment as under the Eighth Amendment.  *See Bruno*, 727 Fed.Appx. at 720 (discussing first

element of pretrial detainee's medical indifference claim according to similar claims brought by convicted plaintiffs under the Eighth Amendment, while consideration of the second element "has nonetheless evolved over time").  The first element is satisfied by establishing the plaintiff suffered from "'a condition of urgency, one that may produce death, degeneration, or extreme pain.'"  *Id.* (quoting *Johnson v. Wright*, 412 F.3d 398, 403 (2d Cir. 2005)).  "The objective inquiry is highly fact-specific, and factors to consider include '(1) whether a reasonable doctor or patient would perceive the medical need in question as 'important and worthy of comment or treatment'; (2) whether the medical condition significantly affects daily activities; and (3) the existence of chronic and substantial pain.'"  *Bowden v. City of Buffalo*, 2018 WL 1570176, at *7 (W.D.N.Y. Mar. 29, 2018) (quoting *Brock v. Wright*, 315 F.3d 158, 162 (2d Cir. 2003)).  Further, although when a complete denial of medical treatment is alleged, the court must evaluate the seriousness of the underlying medical condition.  *Bellotto v. County of Orange*, 248 Fed.Appx. 232, 236 (2d Cir. Sept. 26, 2007) (citing *Smith v. Carpente*r, 316 F.3d 178, 184-86 (2d Cir. 2003)).  Where, however, as here, it is "'a temporary delay or interruption in the provision of otherwise adequate medical treatment'" that is alleged, *id.* (quoting *Smith*, 316 F.3d at 185), the focus is "on the seriousness of the particular risk of harm that resulted from 'the challenged delay or interruption in treatment rather than the prisoner's underlying medical condition alone.'"  *Id.*  "In evaluating the seriousness of the delay in treatment, a court may consider the absence of adverse medical effects or demonstrable physical injury associated with such delay or interruption."  *Bowden*, 2018 WL 1570176, at * 7 (internal quotations and citations omitted).  Significantly, unless the delay in medical care caused substantial harm, it

does not amount to a constitutional claim.  *Id.* (citing *Williams v. Raimo*, 2011 WL 6026111, at * 5 (N.D.N.Y. Dec. 2, 2011)).  To establish the requisite harm, "[a] plaintiff must show either that the underlying medical condition 'actually worsened as a result of the delay' or must show 'very likely future harm' resulting from the delay; conclusory allegations of what 'might' have occurred as a result of delay are insufficient."  *Id.* (quoting *DiChiara v. Wright*, 2011 WL 1303919, at * 6 (E.D.N.Y. Jan. 6, 2011), *report and recommendation adopted as modified*, 2011 WL 1301867 (E.D.N.Y. Mar. 31, 2011)).

Courts within the Second Circuit have often held an abscessed tooth is an objectively serious medical condition to satisfy the first element of an Eighth Amendment medical indifference claim.  *See Chance v. Armstrong*, 143 F.3d 698, 702-03 (2d Cir. 1998) (denying defendant's motion to dismiss inmate plaintiff's Eighth Amendment medical indifference claim based on alleged extreme pain and deteriorating teeth caused by abscessed tooth and rendering the plaintiff unable to properly eat); *Washington v. Farooki*, 2013 WL 3328240, at ** 6-7 (N.D.N.Y. July 2, 2013) (finding inmate's abscessed tooth requiring multiple dental appointments, pain medication, antibiotics, and root canal constituted sufficiently serious medical condition for Eighth Amendment medical indifference claim); *Brown v. Mewar*, 2011 WL 573566, at ** 15 (W.D.N.Y. Feb. 14, 2011) (denying defendants summary judgment on plaintiff's Eighth Amendment medical indifference claim because inmate's abscessed tooth "presents medical urgency that might produce not death, but degeneration or extreme pain, including an inability to eat"), *report and recommendation adopted by* 2011 WL 891403 (W.D.N.Y. Mar. 9, 2011).  Accordingly, because the first element of a medical

indifference claim is the same under both the Eighth and Fourteenth Amendments, *Bruno*, 727 Fed.Appx. at 720, it logically follows that an abscessed tooth is an objectively serious medical condition for purposes of a Fourteenth Amendment medical indifference claim.

Nevertheless, in the instant case, although it is undisputed that Plaintiff's tooth was abscessed, and that Plaintiff experienced a delay of almost a year before finally undergoing the medically recommended root canal on February 4, 2015, the record is devoid of any evidence the delay caused his dental condition to actually worsen or very likely to result in future harm. *Bowden*, 2018 WL 1570176, at *7. Therefore, on this record, Plaintiff cannot establish the first element of a Fourteenth Amendment medical indifference claim. Although the undersigned finds Plaintiff cannot establish the first element of his Fourteenth Amendment medical indifference claim, because the matter is before the undersigned for a report and recommendation, whether Plaintiff can establish the second element is also discussed.

Until recently, courts applied a subjective standard in construing the second element of a medical indifference claim under both the Eighth and Fourteenth Amendments. *Bruno*, 727 Fed.Appx. at 720 (citing cases). The Second Circuit, however, has construed *Kingsley v. Hendrickson*, __ U.S. __, 135 S.Ct. 2466 (2015), as mandating a second objective standard, specifically, "whether a 'reasonable person' would appreciate the risk to which the detainee was subjected." *Bruno*, 727 Fed.Appx. at 720 (quoting *Darnell*, 849 F.3d at 29). Specifically, the second element requires deliberate indifference, *i.e.*, that "the official 'acted *intentionally* to impose the alleged condition, *or recklessly* failed to act with reasonable care to mitigate the risk that the

condition posed to the pretrial detainee even though the defendant-official *knew*, *or should have known*, that the condition posed an excessive risk to health or safety.'" *Bruno*, 727 Fed.Appx. at 720 (quoting *Darnell*, 849 F.3d at 35) (italics in original). "'Mere medical malpractice' is not akin to deliberate indifference." *Parsons v. Tryon*, 2013 WL 3288315, at * 2 (W.D.N.Y. June 28, 2013) (quoting *Cuoco*, 222 F.3d at 107). "Accordingly, pursuant to *Darnell*, an official does not act in a deliberately indifferent manner toward [a detainee] unless the official 'acted *intentionally* to impose the alleged condition, *or recklessly* failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official *knew, or should have known*, that the condition posed an excessive risk to health or safety.'" *Bruno*, 727 Fed.Appx. at 720 (quoting *Darnell*, 849 F.3d at 35) (italics in original). "This intentional or reckless conduct standard requires more than mere negligence." *Sandford v. Rugar*, 2018 WL 3069107 at * 3 (W.D.N.Y. June 20, 2018). Significantly, the second element is not met by medical malpractice, including misdiagnosis, and the decision not to treat based on an incorrect understanding of the condition as benign or trivial. *See Figueroa v. County of Rockland*, 2018 WL 3315735, at * 6 (S.D.N.Y. July 5, 2018) (finding pretrial detainee's allegations that defendants' denial of request to be taken to hospital to get stitches for gash in his hand to avoid infection at worst "amounted to an erroneous calculus of the risks facing Plaintiff, insufficient to demonstrate an intentional deprivation or recklessness" and, thus, failed to establish second element of Fourteenth Amendment medical indifference claim). In short, consideration of the second element of a Fourteenth Amendment medical indifference claim should be based "on what a 'reasonable person' would have believed under the

circumstances," rather than "purely on the mindset of the defendants." *Bruno*, 727 Fed.Appx. at 720 (citing *Darnell*, 849 F.3d at 29, 33-35). The record in the instant case fails to establish any possibility that Moving Defendants intentionally imposed Plaintiff's abscessed tooth condition, or recklessly failed to act with reasonable care to mitigate any risk posed to Plaintiff by his abscessed tooth, and thus fails to establish genuine issues of material fact exist regarding the second element. *Bruno*, 727 Fed.Appx at 720.

Rather, the record establishes that whenever Plaintiff complained of dental pain, he received medical attention, including pain relief medication, antibiotics, and the hydrogen peroxide mouth rinse, which Plaintiff repeatedly reported helped relieve the pain. IPN at Bates 000291-292. Plaintiff was also had several dental appointments, including, most relevantly, a September 11, 2014, dental examination during which the examining dentist prescribed amoxicillin and gave Plaintiff the choice between having the abscessed tooth extracted or undergoing a root canal, with Plaintiff refusing the extraction, and opting for the root canal for which approval by the OIMS was required, and which Plaintiff underwent on February 18, 2015. IPN at Bates 000291-292; Prisoner Medical Requests at Bates 000234.

Although the record indicates that on November 24, 2014, a second request for Plaintiff's root canal was sent to the USMS, IPN at Bates 000292, it is not clear from the record that an earlier request for the root canal was actually made. In fact, the November 24, 2014 Prisoner Medical Request does not indicate it is a second request, Prisoner Medical Requests at Bates 000234, and the attached comments indicate the

request was initiated by one Steven Pascuzzi on November 24, 2014.[25]  *Id.* at Bates

000235.  That same day, more information, particularly Plaintiff's dental records, was

requested, *id.*, and on December 5, 2014, Plaintiff's dental records were reviewed with

additional medical information regarding Plaintiff's oral health was requested.  *Id.*  For

unexplained reasons, the additional information was not requested from Dr. Washburn

until January 6, 2015, who sent the requested information on January 22, 2015, with the

root canal approved that same date.  *Id.*  Because of a conflicting court appearance.

Plaintiff's dental appointment, originally scheduled for February 4, 2015, was

rescheduled for February 18, 2015.  Yasso Declaration ¶ 21.  At some time between

receiving approval for the root canal procedure and the actual procedure being

performed, Yasso was advised by the USMS of plans to transfer Plaintiff to another

facility, but upon Yasso's request, the USMS permitted Plaintiff to remain in the Jail until

Plaintiff underwent the root canal procedure.  Yasso Declaration ¶ 31.  On February 18,

2015, Plaintiff underwent the root canal procedure.  IPN at Bates 000293.

Despite these unexplained delays in seeking and obtaining the USMS approval

for Plaintiff's root canal, including the possibility that following the September 11, 2014

dental examination, no request for approval was submitted until November 24, 2014,

the record establishes Plaintiff continued to be provided with antibiotics, the mouth

rinse, Tylenol and Ibuprofen, and dentape, all of which Plaintiff reported helped alleviate

his dental pain.  *See* IPN at 000291-292.  Yasso, upon being advised Plaintiff was to be

transferred to another facility, requested Plaintiff be permitted to remain at the Jail until

---

[25] A September 15, 2014, entry to Plaintiff's Inmate Progress indicates "[n]o approval from USMS for root
canal yet," IPN at Bates 000291, implying the request was made, but there is no copy of a corresponding
Prisoner Medical Request in the record.  *See* Prisoner Medical Requests, Defendants' Exh. O.

the root canal procedure was completed.  Yasso Declaration ¶ 31.  The record thus simply fails to establish any delays in arranging for Plaintiff's root canal can be attributed to anything other than negligence, arguably by the USMS, a non-party, which cannot establish that Moving Defendants intentionally imposed Plaintiff's abscessed tooth condition, or recklessly failed to act with reasonable care to mitigate any risk posed to Plaintiff by his abscessed tooth.  *Sandford*, 2018 WL 3069107 at * 3 ("This intentional or reckless conduct standard requires more than mere negligence.").[26]  Accordingly, the record fails to establish a genuine issue of material fact as to the second element of Plaintiff's medical indifference claim under the Fourteenth Amendment.

Moreover, insofar as Plaintiff's medical indifference claim is asserted against Defendant Yasso, it must be dismissed for lack of sufficient personal involvement, as Moving Defendants assert, Defendants' Memorandum at 19, an assertion Plaintiff does not address.  It is settled that a plaintiff must establish the defendant was personally involved in the alleged deprivation to obtain relief under § 1983.  *Warren*, 823 F.3d at 136.  The required personal involvement is not satisfied by establishing a link in the chain of command, *McKenna v. Wright*, 386 F.3d 432, 437 (2d Cir. 2004), nor may a supervisory defendant be held liable on a § 1983 action based on *respondeat superior.* *Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003), absent any failure to intervene, failure to remedy a wrong, creating or permitting to continue a policy amounting to an unconstitutional violation, or grossly negligent supervision of subordinates, none or

---

[26] Significantly, Plaintiff does not dispute that, without the requested USMS approval, Defendants were prevented from providing the recommended root canal procedure to Plaintiff.  Accordingly, Plaintiff cannot meet the general causation element with regards to Moving Defendants required by § 1983.  *See Poventud v. City of New York*, 750 F.3d 121, 158 (2d Cir. 2014) (requiring a civil rights plaintiff "must also satisfy the elements of the § 1983 action derived from the common law of torts—specifically, causation." (citing cases)).

which is alleged here. Here, Yasso's only involvement in Plaintiff's dental treatment claim was to investigate Grievance 14-29, Yasso Declaration ¶¶ 18-19, make an inquiry on January 5, 2015, regarding the status of Plaintiff's root canal request, *id.* ¶ 20, and arrange for a delay in Plaintiff's transfer to another facility to ensure Plaintiff received the root canal prior to the transfer. *Id.* ¶ 31. Accordingly, Yasso's involvement in Plaintiff's treatment of his abscessed tooth was limited to investigating Grievance 14-39, following up on the progress of the request to the USMS for approval of the root canal procedure, and arranging to delay Plaintiff's transfer to another facility until after the procedure was performed. The record thus fails to establish any material issue of fact as to Yasso's involvement in Plaintiff's asserted medical indifference claim.

Defendants' Motion should be GRANTED as to Plaintiff's medical indifference claim.

### B.    Equal Protection

Moving Defendants argue that insofar as the Amended Complaint can be construed as asserting a Fourteenth Amendment equal protection claim, Plaintiff has failed to allege he has, based on some protected characteristic, been treated differently than others similarly situated. Defendants' Memorandum at 20. Plaintiff has not responded in opposition to this argument, and Moving Defendants' reference this failure in further support of summary judgment on this claim. Defendants' Reply at 8.

The Fourteenth Amendment's Equal Protection Clause provides that no state shall "deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend. XIV, § 1, cl. 4. Although "the Equal Protection Clause is most commonly used to bring claims alleging discrimination based on membership in a protected class,"

which Plaintiff has not alleged here, a plaintiff nonetheless "can proceed as a 'class-of-one' by establishing that he or she 'has been intentionally treated differently from others similarly situated and that there is no rational basis for the difference in treatment.'" *Holmes v. Haugen*, 356 Fed.Appx. 507, 509 (2d Cir. 2009) (quoting *Village of Willowbrook v. Olech*, 528 U.S. 562, 564 (2000)). *See also Roman v. Donelli*, 347 Fed.Appx. 662, 663 (2d Cir. 2009) (affirming district court's dismissal of inmate plaintiff's equal protection claim based on defendant prison superintendent's denial of plaintiff's request to visit dying wife and attend her funeral because plaintiff had failed, in raising such a "selective treatment claim" to "show that he was treated differently from other similarly-situated individuals and that the differential treatment was based on impermissible considerations."). Accordingly, in the instant case, even assuming Plaintiff could establish either his First Amendment access to courts claim, or his Fourteenth Amendment medical indifference claim, Plaintiff, to prevail on an equal protection claim, must also establish the constitutional denial was without any rational basis. *See Giordano v. City of New York*, 274 F.3d 740, 751 (2d Cir. 2001) (affirming district court's grant of summary judgment in favor of defendants on plaintiff's equal protection claim in the absence of any evidence in the record supporting a jury's finding of intentional discrimination in terminating plaintiff from police department for valid use of prescription drug, while continuing to employ another officer who was prescribed the same drug). Plaintiff has not, however, pointed to any evidence establishing any basis on which a reasonable jury could find that other, similarly situated detainees, either were provided with superior legal resources, or more prompt medical attention for

Plaintiff's dental needs.  Accordingly, summary judgment is GRANTED on any equal protection claim asserted by Plaintiff.

### C.    Qualified Immunity

Although the undersigned is recommending Defendants' Motion for summary judgment be granted on the merits of each of Plaintiff's claims, Moving Defendants' argument that Moving Defendants are qualifiedly immune from liability on each of Plaintiff's claims is addressed in the alternative in the interest of completeness should the District Judge disagree with the initial recommendations.  Moving Defendants argue that even if the court were to find any violation of Plaintiff's rights, none of the rights was so clearly established such that Moving Defendants are entitled to qualified immunity on each of Plaintiff's claims.  Defendants' Memorandum at 20-25.  In further support of summary judgment, Moving Defendants point to Plaintiff's failure to argue in opposition to qualified immunity.  Defendants' Reply at 8-9.

Inasmuch as Moving Defendants maintain they are qualifiedly immune from liability in this action, "[q]ualified immunity shields government officials from civil suits for damages 'insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known,'" *Costello v. City of Burlington*, 632 F.3d 41, 51 (2d Cir. 2011) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)), as enunciated by the Supreme Court or, as in this case, by the Second Circuit.  *Higazy v. Templeton*, 505 F.3d 161, 169 (2d Cir. 2009).  In determining whether a particular right was, at the time of the incident in question, clearly established, the court considers three factors: "(1) whether the right in question was defined with 'reasonable specificity'; (2) whether the decisional law of the Supreme Court and the

applicable circuit court support the existence of the right in question; and (3) whether under preexisting law a reasonable defendant official would have understood that his or her acts were unlawful." *Higazy*, 505 F.3d at 169 (quoting *Jermosen v. Smith,* 945 F.2d 547, 550 (2d Cir.1991)). "[E]ven where the law is 'clearly established' and the scope of an official's permissible conduct is 'clearly defined,' the qualified immunity defense also protects an official if it was 'objectively reasonable' for him at the time of the challenged action to believe that his acts were lawful." *Id.* at 169–70 (citing *Anderson v. Creighton,* 483 U.S. 635, 641 (1987)). Whether a right was clearly established at the relevant time is a matter of law, while "whether a defendant official's conduct was objectively reasonable, *i.e.,* whether a reasonable official would reasonably believe his conduct did not violate a clearly established right, is a mixed question of law and fact." *Id.* at 170 (citing *Kerman v. City of New York*, 374 F.3d 93, 108-09 (2d Cir. 2004)). Furthermore, "'[a]lthough a conclusion that the defendant official's conduct was objectively reasonable as a matter of law may be appropriate where there is no dispute as to the material historical facts, if there is such a dispute, the factual questions must be resolved by the factfinder.'" *Id.* (quoting *Kerman v. City of New York,* 374 F.3d 93, 108–09 (2d Cir.2004)). Here, Moving Defendants would be shielded by qualified immunity from liability on Plaintiff's medical indifference claim, but not on the access to courts claim.

In particular, it was well-established by September 2014, when Plaintiff maintains the Jail's law library and legal assistance were inadequate to permit Plaintiff to pursue post-conviction relief, that those incarcerated must be provided "with the tools they 'need in order to attach their sentences, directly or collaterally, and in order to challenge the conditions of their confinement,'" *Bourdon*, 386 F.3d at 93 (quoting *Lewis*, 518 U.S.

at 355, and citing *Bounds*, 430 U.S. at 825), and that this "right has particular application to prisoners seeking access to the courts, where they are defending against criminal charges, challenging convictions and sentences, and raising civil rights claims against the conditions of their confinement." *Bourdon*, 386 F.3d 92 n. 8). As such, Moving Defendants could not reasonably have believed that denying Plaintiff adequate legal resources to pursue his collateral attacks on his Florida conviction, specifically, his sentence as a career felony offender, would not have violated Plaintiff's constitutional right of access to the courts.[27]

In contrast, as of 2014, the legal standard applicable to Plaintiff's medical indifference claim was not so clearly established. In particular, prior to the Supreme Court's pronouncement in *Kingsley*, 135 S.Ct. 2466, decided in 2015, that mandated the second element of a pretrial detainee's conditions of confinement claim as an objective standard, at issue in *Kingsley* was a claim of excessive force, not medical indifference. Significantly, the Supreme Court has yet to apply *Kingsley* to a medical indifference claim, and the Second Circuit did not do so until this year when it construed the second element of such claim as "whether a 'reasonable person' would appreciate the risk to which the detainee was subjected," *Bruno*, 727 Fed.Appx. at 720 (quoting *Darnell*, 849 F.3d at 29). Accordingly, because the second element of a medical indifference claim was not clearly decided at the time relevant to Plaintiff's claim regarding his abscessed tooth, Moving Defendants would be qualifiedly immune from liability on such claim.

---

[27] Although the initial recommendation is that Plaintiff's representation by legal counsel throughout the pendency of the criminal proceedings defeats his access to courts claim on the merits, this alternative qualified immunity determination applies regardless of such legal representation.

Accordingly, as to Moving Defendants' alternative qualified immunity argument, Defendants' Motion should be DENIED with regard to the access to courts claim, but should be GRANTED with regard to the medical indifference claim.

## 2. Sanctions

Plaintiff moves for sanctions against Moving Defendants' attorneys, Webster Szanyi, LLP, and Ryan Smith, of Counsel, for violating HIPAA privacy provisions by forwarding Plaintiff's medical records to other, unidentified parties. Plaintiff's Motion at 1-2. In opposition, Moving Defendants maintain that Plaintiff, by placing his medical condition at issue, has waived any right to confidentiality in his medical records, Smith Declaration ¶ 4, and, in any event, the only medical records disclosed by Moving Defendants were those pertaining to Plaintiff's dental issue. *Id.* ¶ 5. Plaintiff has not argued in further support of his motion.

By commencing this action seeking damages for an asserted denial of appropriate medical treatment, Plaintiff has placed his relevant medical condition at issue, and thereby has waived any right to privacy or confidential protection otherwise applicable to his medical records under HIPAA. *See Soto v. The City of New York*, 2015 WL 6503819, at ** 2-3 (S.D.N.Y. Oct. 28, 2015) (ordering plaintiffs who commenced § 1983 excessive force claim against defendants to provide HIPAA-compliant release authorizing defense counsel access to plaintiffs' medical records because plaintiffs had put their medical condition at issue); *see also In re Sims*, 534 F.3d 117, 132, 134 (2d Cir. 2008) (waiver is required "in the interests of fairness," so that a party cannot "use the privilege both as a shield and a sword" (internal quotation

marks and citation omitted)). Accordingly, there is no merit to Plaintiff's Motion seeking sanctions for HIPAA violations, and Plaintiff's Motion is DENIED.

## **CONCLUSION**

Defendants' Motion (Dkt. 188) should be GRANTED on the merits of Plaintiff's claims, and the action should be DISMISSED as against Moving Defendants; alternatively, with regard to qualified immunity, Defendants' Motion should be GRANTED as to the medical indifference claim, and should be DENIED as to the access to courts claim; Plaintiff's Motion (Dkt. 198), is DENIED.

Respectfully submitted, as to Defendants'
Motion to Dismiss or for Summary Judgment,

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

SO ORDERED, as to Plaintiff's
Motion for Sanctions.

/s/ *Leslie G. Foschio*

_____
LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:      September 27, 2018
            Buffalo, New York

**ORDERED** that this Report and Recommendation be filed with the Clerk of the Court.

**ANY OBJECTIONS** to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of service of this Report and Recommendation in accordance with the above statute, Rules 72(b), 6(a) and 6(d) of the Federal Rules of Civil Procedure and Local Rule 72.3.

**<u>Failure to file objections within the specified time or to request an</u> <u>extension of such time waives the right to appeal the District Court's Order.</u>** *Thomas v. Arn*, 474 U.S. 140 (1985); *Small v. Secretary of Health and Human Services*, 892 F.2d 15 (2d Cir. 1989); *Wesolek v. Canadair Limited*, 838 F.2d 55 (2d Cir. 1988).

Let the Clerk send a copy of this Report and Recommendation to the attorneys for the Plaintiff and the Defendants.

SO ORDERED.

/s/ *Leslie G. Foschio*

_____

LESLIE G. FOSCHIO
UNITED STATES MAGISTRATE JUDGE

DATED:       September 27, 2018
                    Buffalo, New York